IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-442-D

| | |
|---|---|
| THOMAS J. AYERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| JOSEPH MARKIEWICZ, et al., ) | |
| ) | |
| Defendants. ) | |

On August 8, 2023, Thomas J. Ayers ("Ayers" or "plaintiff") filed a complaint against Joseph Markiewicz, Mary Beth Markiewicz (collectively "the Markiewiczs"), and Douglas Weir ("Weir") (collectively "the individual defendants") alleging defamation, tortious interference with contractual relations and prospective economic advantage, battery, intentional infliction of emotional distress ("IIED"), abuse of process, and malicious prosecution. See [D.E. 1] ¶¶ 23–52. On November 7, 2023, Ayers filed an amended complaint against the individual defendants, Leadership Team Development, Inc. ("LTD"), and Amway Corporation ("Amway") (collectively "defendants") alleging defamation, tortious interference with contractual relations and prospective economic advantage, civil conspiracy to commit battery, IIED, abuse of process, malicious prosecution, civil conspiracy, and battery. See [D.E. 9] ¶¶ 34–68.[1]

On January 29, 2024, the individual defendants moved to compel arbitration or, alternatively, dismiss Ayers's complaint for failure to state a claim upon which relief can be

---

[1] Ayers's amended complaint also appears to assert a cause of action for punitive damages. See Am. Compl. [D.E. 9] ¶¶ 69–70. Ayers clarifies that he does not assert punitive damages as a cause of action. See [D.E. 43] 15–16. Rather, Ayers seeks punitive damages as a remedy. See id.

granted [D.E. 34] and filed a memorandum in support [D.E. 35]. See 9 U.S.C. § 4; Fed. R. Civ. P. 12(b)(6). The same day, Amway filed an unopposed motion to dismiss and compel arbitration [D.E. 36] and filed a memorandum in support [D.E. 37]. See 9 U.S.C. § 4; Fed. R. Civ. P. 12(b)(1), (3). The same day, LTD moved to dismiss and compel arbitration [D.E. 39] and filed a memorandum in support [D.E. 40]. See 9 U.S.C. § 4; Fed. R. Civ. P. 12(b)(1), (3), (6).

On February 26, 2024, Ayers responded in opposition to the individual defendants' motion to compel arbitration [D.E. 43]. On February 26, 2024, Ayers notified the court that he did not oppose LTD's motion to compel arbitration [D.E. 44]. On March 18, 2024, the individual defendants replied [D.E. 46]. As explained below, the court grants defendants' motions to compel arbitration.

I.

"Amway is a multi-level marketing company that contracts with individuals to" buy and sell its products. Am. Compl. ¶ 15. LTD is a sales organization consisting of Amway Independent Business Owners ("IBOs"). See id. at ¶ 16. Between August 1999 and June 17, 2022, Ayers was an IBO with Amway and LTD. See id. Ayers had contracts with Amway ("the Amway Agreement") and LTD ("the LTD Agreement") (collectively "the Agreements") that included arbitration clauses. See id. at ¶ 12; see also [D.E. 34-1] 7–30 (the Amway Agreement), 32–59 (the LTD Agreement). Weir and Joseph Markiewicz are "LTD and Amway corporate officers." Am. Compl. ¶ 21. Ayers alleges Mary Beth Markiewicz is an agent of Amway and LTD. See id. at ¶ 33. The Markiewiczs are married. See id. at ¶ 2.

In early 2021, Ayers told Weir and Joseph Markiewicz that "Amway portray[ed] overtly patriotic views" but ignored "valid documented concerns" about the legitimacy of the 2020 United States presidential election and the events of January 6, 2021. Id. at ¶¶ 18–19. Ayers also raised

2

concerns about Amway's political funding and possible election interference. See id. at ¶ 17; [D.E. 34-1] 61–62. Ayers also told Weir and Joseph Markiewicz "about Amway's support of former Vice President Mike Pence and his actions related to confirming the 2020 election result . . . and the resignation of Amway Owner and Secretary of Education" Betsy DeVos on January 7, 2021. Am. Compl. ¶ 20; see [D.E. 34-1] 64–65. Ayers alleges that Weir and Joseph Markiewicz had a "duty to investigate documented concerns" about Amway's role in the 2020 election. Am. Compl. ¶ 20; see id. at ¶ 16 ("Ayers . . . raise[d] documented concerns . . . to the attention of the [d]efendants concerning the cover up of Amway activities related to interference in the 2020 election.").

From February 2021 to June 2022, Weir and Joseph Markiewicz approached Ayers's sales team members ("Ayers's downline") and encouraged them to stop working with Ayers. See id. at ¶ 21. Weir and Joseph Markiewicz told Ayers's downline that Ayers is a mentally ill conspiracy theorist. See id. Weir and Joseph Markiewicz warned some of Ayers's downline that they "legally" should not talk to Ayers and should remove and block Ayers on social media. Id. Members of Ayers's downline told Ayers about these interactions. See id. Weir and Joseph Markiewicz also told Ayers "to remain silent 'or else,'" and they asked Ayers if he "wanted to die on this mountain." Id. at ¶ 22. Ayers alleges that at one point, Joseph Markiewicz and Weir cut off Ayers's "communication from the LTD/Amway messaging system prior to any written notice and sent a cease and desist letter to his LTD/Amway business." Id. at ¶ 23. Ayers sought to challenge the cease-and-desist letter, but Joseph Markiewicz "used his position as an officer . . . to deprive Ayers of his contractual right to a peer review." Id.

On July 28, 2022, Ayers bought a ticket to attend the "LTD/Amway HOAL 22 Baseball game," a public event. Id. at ¶¶ 24–25. On July 29, 2022, Ayers attended the game. See id. at ¶

3

24. At the game, members of Ayers's downline expressed their confusion that they could no longer reach Ayers on the LTD/Amway messaging app. See id. Then, Mary Beth Markiewicz grabbed Ayers's arm "so hard that her fingernails tore the skin on [Ayers's] right arm." Id. at ¶ 25. Mary Beth Markiewicz told Ayers to leave the game. See id. Ayers declined, showed her his ticket, and said he wanted to see "the hundreds of people to which [the Markiewiczs] had defamed Ayers." Id. Mary Beth Markiewicz let go, left Ayers, and called the police to tell them Ayers "was looking to harm her husband and was armed." Id.

Police officers arrived and asked Ayers if he was armed. See id. at ¶ 26. He was not. See id. The officers told Ayers that Ayers was trespassing and needed to leave the baseball game. See id. Ayers complied. See id. Once outside the stadium, the officers assaulted Ayers. See id. at ¶ 27. Approximately ten officers "punched and kicked Ayers," breaking his ribs and causing serious bruising on Ayers's body. See id. The officers arrested Ayers and took him to jail for disorderly conduct. See id. Later, a judge dismissed Ayers's disorderly conduct charge. See id. at ¶ 28.

On May 9, 2022, Joseph Markiewicz told Ayers "that he knew . . . Ayers was mentally sound and not dangerous and that he was engaging in this conduct to silence Ayers and destroy [Ayers's] credibility to cover up the concerns Ayers had" about Amway's involvement in the 2020 election. Id. at ¶ 30. Nonetheless, on July 30, 2022, Joseph Markiewicz sent an audio message on the LTD/Amway messaging app telling Ayers's "former downline and thousands of others" that Ayers is "mentally ill." Id. at ¶ 29. Joseph Markiewicz also said Ayers "was probably armed," had an "intent to harm" Joseph Markiewicz, and "was of the Devil." Id. Over the next few days, other Amway/LTD members told Ayers they were "not allowed to speak" to Ayers or Ayers's wife. Id. at ¶ 31. LTD/Amway officers told the other Amway/LTD members "that if they did speak to Ayers, they would suffer legal and business consequences." Id. "Multiple witnesses

4

reported and confirmed that [Joseph Markiewicz] and [Weir] had mentioned to [Ayers's] downline that Ayers may become a potential mass shooter, and that Ayers had a bullet with his name on it." Id. On October 14, 2022, Ayers's former teammates told Ayers that Amway/LTD officials posted signs at security checkpoints at the Amway Summit Conference, which displayed Ayers's photograph, and demanded anyone who saw Ayers immediately report him to security. See id. at ¶ 32.

Ayers timely filed for arbitration with the American Arbitration Association ("AAA") against Amway and LTD. See id. at ¶ 12. Amway and LTD argued that Ayers failed to properly serve the entities, and the arbitrator dismissed Ayers's arbitration. See id. at ¶¶ 13–14. On August 8, 2023, Ayers brought this action. See [D.E. 1].

II.

The Federal Arbitration Act ("FAA") provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; see Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 67 (2010); Amos v. Amazon Logistics, Inc., 74 F.4th 591, 595 (4th Cir. 2023). The standard for deciding a motion to compel arbitration brought under the FAA, 9 U.S.C. § 4, is similar to the standard applicable to a motion for summary judgment. See, e.g., Naimoli v. Pro-Football, Inc., ___ F. Supp. 3d ___, 2023 WL 5985256, at *4–5 (D. Md. Sept. 14, 2023). To compel arbitration, the movant must show: "(1) a dispute exists between the parties; (2) the dispute falls within the scope of a written, valid agreement that includes an arbitration provision; (3) the parties' agreement relates to interstate or foreign commerce; and (4) the opposing party has failed or refused to arbitrate the dispute at hand." Amos, 74 F.4th at 595; see Adkins v. Lab. Ready, Inc., 303 F.3d

5

496, 500–01 (4th Cir. 2002); De Sa v. RPS Holdings, LLC, 577 F. Supp. 3d 395, 396–97 (E.D.N.C. 2022).

Under the FAA, a court interprets an arbitration agreement according to the intentions of the parties. See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985); Wash. Square Sec., Inc. v. Aune, 385 F.3d 432, 435 (4th Cir. 2004). Although a court interprets an arbitration agreement using principles of state contract law, "due regard must be given to the federal policy favoring arbitration." Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 476 (1989); see Wachovia Bank, Nat'l Ass'n v. Schmidt, 445 F.3d 762, 767 (4th Cir. 2006); Newman v. First Montauk Fin. Corp., No. 7:08-CV-116, 2010 WL 2933281, at *4–5 (E.D.N.C. July 23, 2010) (unpublished). Accordingly, "the parties' intentions are generously construed as to issues of arbitrability, and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Newman, 2010 WL 2933281, at *4 (quotations and citation omitted); see Mitsubishi Motors Corp., 473 U.S. at 626; Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983), superseded by statute on other grounds, 9 U.S.C. § 16(b)(1); Aune, 385 F.3d at 436.

By enacting the FAA, Congress created a "presumption" in favor "of arbitrability." AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986). A court must resolve any doubts in favor of arbitration and compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Id.; see, e.g., Moses H. Cone Mem'l Hosp., 460 U.S. at 24–25; Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc., 380 F.3d 200, 204 (4th Cir. 2004). Thus, "the heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." Peoples Sec. Life Ins. Co. v. Monumental Life Ins.

6

Co., 867 F.2d 809, 812 (4th Cir. 1989). Furthermore, where an arbitration clause is reasonably susceptible of an interpretation that covers the dispute between the parties, only an "express provision" in the arbitration agreement excluding the dispute or "the most forceful evidence of a purpose to exclude the claim from arbitration" suffices to preclude arbitration. Aune, 385 F.3d at 436 (quotations omitted).

Ayers does not oppose Amway or LTD's motions. See [D.E. 44] 1; cf. [D.E. 36] 1. Accordingly, the court grants Amway and LTD's motions to dismiss and compel arbitration. See, e.g., United States ex rel. Harbor Constr. Co. v. T.H.R. Enters., Inc., No. 4:14CV17, 2014 WL 4452755, at *1–3 (E.D. Va. Sept. 9, 2014) (unpublished).

The individual defendants move to compel arbitration of Ayers's claims against them. See [D.E. 35] 1–3, 7–14. Ayers argues that the individual defendants cannot enforce the Agreements' arbitration clauses because the individual defendants are not parties to the Agreements. See [D.E. 43] 1–2, 3–5. The individual defendants respond that nonsignatories can enforce arbitration agreements. See [D.E. 46] 2–3.

The parties agree that North Carolina law governs the Amway and LTD Agreements. See, e.g., [D.E. 43] 3–8; [D.E. 46] 2–5. Generally, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960). The law, however, "of the Fourth Circuit and of North Carolina is well-established that a nonsignatory to an arbitration clause may, in certain situations, compel a signatory to the clause to arbitrate the signatory's claims against the nonsignatory despite the fact that the signatory and nonsignatory lack an agreement to arbitrate." Erichsen v. RBC Cap. Mkts., LLC, 883 F. Supp. 2d 562, 571 (E.D.N.C. 2012) (quotation omitted); see Rogers v. Tug Hill Operating, LLC, 76 F.4th 279, 285–

88 (4th Cir. 2023); Am. Bankers Ins. Grp., Inc. v. Long, 453 F.3d 623, 627 (4th Cir. 2006); Klopfer v. Queens Gap Mountain, LLC, 816 F. Supp. 2d 281, 292 (W.D.N.C. 2011); Collie v. Wehr Dissolution Corp., 345 F. Supp. 2d 555, 561–62 (M.D.N.C. 2004); Ellison v. Alexander, 207 N.C. App. 401, 411–12, 700 S.E.2d 102, 110–11 (2010); Ellen v. A.C. Schultes of Md., Inc., 172 N.C. App. 317, 320, 615 S.E.2d 729, 732 (2005); Brown v. Centex Homes, 171 N.C. App. 741, 745–46, 615 S.E.2d 86, 88–89 (2005).[2]

Equitable estoppel allows a nonsignatory to compel arbitration in two circumstances: (1) the signatory relies "on the terms of the written agreement in asserting its claims against the nonsignatory"; or (2) the signatory "raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." Brantley v. Republic Mortg. Ins. Co., 424 F.3d 392, 395–96 (4th Cir. 2005) (cleaned up). A nonsignatory can also compel arbitration against a signatory under "[w]ell-established common law principles" of agency. Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 416–17 (4th Cir. 2000); see Ellison, 207 N.C. App. at 412–13, 700 S.E.2d at 111.

Ayers, Amway, and LTD signed the Agreements. See Am. Compl. ¶ 12; [D.E. 43] 1; see also [D.E. 34-1] 43. Ayers alleges all but one of his claims against all defendants using the same allegations and claim language. See Am. Compl. ¶¶ 34–70. Moreover, Ayers alleges "unified and

---

[2] The Agreements both have choice-of-law provisions which specify that Michigan law governs. See [D.E. 34-1] 8, 41. None of the parties argue that this court should apply Michigan law. The court need not decide which state's law to apply because Michigan law does not substantially differ from North Carolina law on this issue. See, e.g., Southerland v. Corp. Transit of Am., No. 13-14462, 2014 WL 4906891, at *4–5 (E.D. Mich. Sept. 30, 2014) (unpublished); D&R Co. v. BASF Corp., No. 09-CV-10641, 2010 WL 11545257, at *5–6 (E.D. Mich. Mar. 26, 2010) (unpublished); Steward v. Sch. Dist. of City of Flint, ___ N.W.3d ___, 2023 WL 3395444, at *2–3 (Mich. Ct. App. May 11, 2023); AFSCME Council 25 v. Wayne Cnty., 292 Mich. App. 68, 81–82, 811 N.W.2d 4, 12–13 (2011).

8

interdependent misconduct by all defendants." Piascik v. Biomass Controls PBC, No. 5:20-CV-26, 2020 WL 2735385, at *5 (E.D.N.C. May 26, 2020) (unpublished). Thus, the individual defendants can enforce the Agreements' arbitration provisions. See, e.g., id. at *4–5.

Alternatively, Ayers alleges that Joseph Markiewicz and Weir are corporate officers of LTD and Amway. See Am. Compl. ¶ 21. Ayers also alleges Mary Beth Markiewicz is an agent of Amway and LTD. See id. at ¶ 33; see also [D.E. 34-2] ¶¶ 2–3. Ayers alleges the individual defendants acted on behalf of Amway and LTD to cover up Ayers's concerns about Amway's involvement in the 2020 election, which caused Ayers to lose his Amway business. See Am. Compl. ¶¶ 16–17, 21–22, 30, 33, 39, 45, 56, 60. Thus, the individual defendants can enforce the Agreements' arbitration provisions as agents of Amway and LTD. See, e.g., Ellison, 207 N.C. App. at 412–13, 700 S.E.2d at 111.

In opposition to this conclusion, Ayers argues that the individual defendants cannot enforce the Agreements' arbitration provisions because they are not parties to the Agreements. See [D.E. 43] 3–5. As discussed, the individual defendants' status as nonparties is not dispositive. See, e.g., Ellison, 207 N.C. App. at 412, 700 S.E.2d at 110–11 ("[T]he mere fact that [the] [d]efendant did not sign the SSAs in his individual capacity does not preclude him from enforcing the provisions of the arbitration clause contained in that document."). Accordingly, the court reject Ayers's argument. The individual defendants can enforce the Agreements' arbitration provisions.

The parties dispute whether Ayers's claims "fall[] within the scope of" the Agreements' arbitration provisions, i.e., the arbitrability of Ayers's claims. Amos, 74 F.4th at 595. The individual defendants argue that all Ayers's claims are arbitrable because they "arise out of or relate to" the Agreements. See [D.E. 35] 10–14. Ayers responds that most of his claims against the individual defendants are not arbitrable because his claims do not arise out of the terms of the

9

Agreements. See [D.E. 43] 5–8.[3] The individual defendants reply that Ayers's reading of the Agreements is too narrow considering Ayers's lack of opposition to Amway and LTD's motions to compel arbitration. See [D.E. 46] 1–2, 3–5. Amway argues in its unopposed motion to compel arbitration that under the terms of the Agreements, an arbitrator must determine the arbitrability of Ayers's claims. See [D.E. 37] 9–12.

"Courts should not assume that the parties agreed to arbitrate arbitrability . . . ." First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Parties, however, can agree to arbitrate arbitrability if they "clearly and unmistakably provide that the arbitrator shall determine what disputes the parties agreed to arbitrate." Peabody Holding Co. v. United Mine Workers of Am., Int'l Union, 665 F.3d 96, 102 (4th Cir. 2012) (quotations omitted); see AT&T Techs., Inc., 475 U.S. at 649; Carson v. Giant Food, Inc., 175 F.3d 325, 329 (4th Cir. 1999). Broad arbitration clauses alone do not suffice. See Peabody Holding Co., 665 F.3d at 102; Hetrick Cos. v. IINK Corp., ___ F. Supp. 3d ___, 2024 WL 47408, at *9 (E.D. Va. Jan. 3, 2024). "Those who wish to let an arbitrator decide which issues are arbitrable need only state that 'all disputes concerning the arbitrability of particular disputes under this contract are hereby committed to arbitration,' or words to that clear effect." Carson, 175 F.3d at 330–31. Additionally, incorporation of the AAA or Judicial Arbitration and Mediation Services ("JAMS") rules "constitutes evidence that the parties delegated arbitrability questions to the arbitrator." Devine v. Bethesda Softworks, LLC, 636 F. Supp. 3d 564, 572–73 (D. Md. 2022); see Simply Wireless, Inc. v. T-Mobile US, Inc., 877

---

[3] Ayers concedes that "the Court should simply dismiss" his tortious interference claims "and compel them to be decided through arbitration." [D.E. 43] 10.

10

F.3d 522, 527–28 (4th Cir. 2017), abrogated on other grounds by Henry Schein, Inc. v. Archer & White Sales, Inc., 586 U.S. 63 (2019).

The LTD Agreement states that an "arbitrator shall have exclusive authority to resolve any dispute relating to the enforceability of this Agreement and any of its provisions including, but not limited to, jurisdictional and arbitrability disputes." [D.E. 34-1] 39. The LTD Agreement also states that an "arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." Id. at 40. Thus, the parties to the LTD Agreement clearly and unmistakably agreed to arbitrate arbitrability. See, e.g., Galloway v. Priority Imports Richmond, LLC, No. 20-1020, 2023 WL 1858387, at *1 (4th Cir. Feb. 9, 2023) (per curiam) (unpublished); Shaomin Sui v. FedEx Ground Package Sys., Inc., Civ. No. 19-3318, 2020 WL 3639984, at *5 (D. Md. July 6, 2020).

The Amway Agreement states that "[a]rbitrability [i]ssues [are] to [b]e [d]ecided [b]y [an] [a]rbitrator." [D.E. 34-1] 30. The Amway Agreement also states that an arbitrator, "and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability[,] or formation of this Agreement including, but not limited to[,] any claim that all or any part of this Agreement is void or voidable." Id. Moreover, the Amway Agreement incorporates the AAA rules. See id. at 29.[4] Thus, the parties to the Amway Agreement clearly and unmistakably agreed to arbitrate arbitrability. See, e.g., Novic v. Credit One Bank, Nat'l Ass'n, 757 F. App'x 263, 266 (4th Cir. 2019) (unpublished); Devine, 636 F. Supp.

---

[4] The court assumes without deciding that a sophisticated party may not compel an unsophisticated party's arbitrability issues to an arbitrator based on incorporation of the AAA or JAMS rules alone. See, e.g., Stone v. Wells Fargo Bank, N.A., 361 F. Supp. 3d 539, 552–55 (D. Md. 2019). This court, however, need not decide whether Ayers is an unsophisticated party because the plain text of the Agreements suffices to delegate arbitrability questions to an arbitrator. The parties' incorporation of the AAA rules bolsters that conclusion.

11

3d at 570–73; Smith v. Gen. Info. Sols., LLC, Civ. No. 3:18-2354, 2018 WL 6528155, at *4–5 (D.S.C. Dec. 11, 2018) (unpublished). Accordingly, the court grants the individual defendants' motion to compel arbitration. See Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.").

This conclusion comports with Ayers's contradictory stances concerning the defendants' motions to compel arbitration. As discussed, Ayers brings all his claims against all defendants except his battery claim. See Am. Compl. ¶¶ 34–70. Ayers does not oppose Amway and LTD's motions to compel Ayers's claims to arbitration, but Ayers opposes the individual defendants' motion to compel the same claims to arbitration. See [D.E. 36] 1; [D.E. 43]; [D.E. 44]. The only difference between the motions is the specific defendants who filed them. Thus, Ayers implicitly concedes that the court should compel his claims to arbitration if the defendants can enforce the Agreements' arbitration provisions. As discussed, the individual defendants can enforce the Agreements' arbitration provisions. Accordingly, the court compels Ayers's claims to arbitration.

Once a court has determined that the parties agreed to arbitrate arbitrability, the court must order arbitration even "if the argument for arbitration is wholly groundless." Henry Schein, Inc., 586 U.S. at 66; see, e.g., Galloway, 2023 WL 1858387, at *1–2. The court's only role at this stage is to decide if the parties formed a valid agreement to arbitrate. See, e.g., Rogers, 76 F.4th at 286; Rowland v. Sandy Morris Fin. & Est. Planning Servs., LLC, 993 F.3d 253, 257–58 (4th Cir. 2021).

Ayers does not challenge the validity of the Agreements or of the arbitration provisions. Cf. [D.E. 36] 1; [D.E. 44] 1. Instead, Ayers argues that the individual defendants' interpretation of the Agreements' arbitration provisions would render those provisions unconscionable. See

12

[D.E. 43] 7–8. In effect, Ayers argues that the individual defendants are wrong to argue that his claims are arbitrable. This is a repackaged arbitrability argument that Ayers may present to the arbitrator. Accordingly, the court orders arbitration.

Finally, "[t]here is tension within the Fourth Circuit regarding whether dismissal or a stay is appropriate when granting a motion to compel arbitration." Stone, 361 F. Supp. 3d at 557 (quotation omitted); see Aggarao v. MOL Ship Mgmt. Co., 675 F.3d 355, 376 (4th Cir. 2012). The Fourth Circuit, however, has held that "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709–10 (4th Cir. 2001); see Stone, 361 F. Supp. 3d at 557–58. Accordingly, the court dismisses Ayers's complaint without prejudice pending arbitration of his claims.

III.

In sum, the court GRANTS defendants' motions to compel arbitration [D.E. 34, 36, 39], DISMISSES WITHOUT PREJUDICE plaintiff's complaint, and ORDERS plaintiff to arbitrate his claims. The clerk shall close the case.

SO ORDERED. This 9 day of May, 2024.

JAMES C. DEVER III
United States District Judge